PETER SIEMERS ET AL., Appellants, v. GUSTAV SCHRADER
ET AL., Respondents.

November 20, 1883.

1. NOTICE — COMPUTATION OF TIME. — An advertisement published for the
first time on May 14th for a sale on June 2d. is not made in compliance
with the terms of a deed which requires twenty days' notice to be given.

2. ESTOPPEL — EJECTMENT. — The rule that one who is in possession under
the plaintiff can not dispute the plaintiff's title in an action for posses-
sion, is held not to apply to this case for want of evidence of the plain-
tiff's title or of the defendant's possession under him.

3. EJECTMENT. — A plaintiff in ejectment can not recover on the weakness of
the defendant's title, but must rely on the strength of his own.

APPEAL from the St. Louis Circuit Court, LUBKE, J.
Affirmed.

THOS. A. RUSSELL, for the appellants.

PATTISON & CRANE, for the respondents.

BAKEWELL, J., delivered the opinion of the court.

This was ejectment against Schrader, who was tenant of
Chambers.   Chambers, of his own motion, was made co-
defendant.   He admitted possession; but denied all other
allegations of the petition; and, as an affirmative defence,
he set up purchase at a tax sale in October, 1872, and a tax
deed to him in pursuance of the sale, filed for record on
February 26, 1876; and pleaded the special three year
limitation of the revenue law of 1872, in bar.   He also
pleaded adverse possession for ten years before this suit.

The cause was tried by the court, a jury being waived.
The finding and judgment were for defendant.

The premises in question are lots 9 and 10 in block 2 of
Blow and LeBeaume's addition, being block 743 of St.
Louis.

It was stipulated that Virginia Brault was in possession,
claiming to own the premises, on December 1, 1868, and

remained in possession till March 28, 1876, at which date said Brault, with Harrison K. Bunch and Nancy Bowner, executed and delivered to defendant Chambers a quit-claim deed for the premises, and gave him possession. This suit was begun on May 20, 1882.

Plaintiff offered in evidence a deed of trust executed by Virginia Brault and H. K. Bunch to Butler, as trustee of John Barr, dated December 15, 1868, to secure a note of Brault and Bunch of same date, at six months, to order of Barr, for $300. The deed purports to convey the lots in question and also a 9$^{98}$/$_{100}$ acre lot, being lot 22 of Graham's subdivision of the Sulphur Spring tract in Central Township. The deed is in the usual form, and provides for sale on default, on twenty days' notice in a St. Louis newspaper. The note was also offered. Across the face of it was written or stamped, "Paid. John R. Sayers, Teller." Plaintiff also offered the trustee's deed, dated June 2, 1870, to plaintiff Siemers, which purports to convey to him all the property described in the deed of trust, for $1,355, bid by Siemers at a foreclosure sale on June 2, 1870. This deed recites, that the note remained due and unpaid at and after the time specified in said note and deed of trust for its payment. The affidavit of the printer attached, shows an advertisement in the *St. Louis Times* for seventeen times. The first publication was on May 14th, and the last on the 2d of June. There was no publication on the 16th of June, 23d, and 30th of June. Defendant objected to the deed of the trustee, on the ground that it showed insufficient notice. The deed was excluded.

Plaintiff then offered in evidence a writing without date, signed by plaintiff Siemers, witnessed by Aug. Gehner and H. K. Bunch; proved by the witness as executed in June, 1870, in default of acknowledgment, and recorded on March 18, 1871. This instrument sets out with a preamble, reciting that a note made by H. K. Bunch to order of Margaret Holmes, dated August 22, 1864, at two years, was

secured by deed of trust executed by said Bunch upon five acres of the lot 22 of the Sulphur Spring tract mentioned above; that this note was sold by Holmes to Siemers on April 15, 1870, for $400, who owns and holds the same, and the deed of trust securing it. That said Bunch, on June 29, 1864, executed a deed of trust upon one acre of the same lot in the Sulphur Spring tract, to secure his note of same date at twelve months for $407, to order of Leonora Sackett; that Virginia Brault and Bunch executed the note and deed of trust above described as having been offered in evidence in this case; that Siemers, on April 30, 1870, paid $55 for an examination of the title of this property, and at same date paid to one Allen, who claimed to hold and own it, the amount of said $300 note, and thereby became owner of that note and the deed of trust given to secure it; that Siemers, in January, 1870, at the request of Virginia Brault, paid $221 in satisfaction of a judgment against her, whereby Brault became indebted to Siemers in that amount; that Siemers, in May, 1870, paid $700, the back taxes assessed against " said property," whereby Brault became indebted to him in that sum. The instrument then proceeds: "Now, therefore, in order to secure the said Siemers for the whole amount of money due him by the said Brault and Bunch, he the said Siemers agrees to sell, without unnecessary delay, the property described under the deed of trust herein mentioned, and at the said trustee's sale, bid in all of said property, and have a deed of the same made to him; but he, the said Siemers, also agrees, on the payment to him by the said Brault, or any one in her behalf, of the various sums of money herein named as having been paid by him, said Siemers, for said Brault and Bunch for said notes, with ten per cent interest on the whole amount, the costs and expenses of said trustee's sale, convey by proper deed the whole of said property to said Virginia Brault or other person by her named; the intent and meaning of this agreement being, that if said Brault

shall pay to said Siemers the money to which he is lawfully entitled on account of the transactions herein named, he, the said Siemers, then shall convey said property to said Brault unincumbered by said Siemers, being further understood and agreed between the parties that the said Siemers will not convey or otherwise dispose of the property herein described for the period of two years from this date, and that he, said Siemers, at or any time within the period of two years, upon the payment of principal and interest due him, convey the within property to Virginia Brault or whomsoever she directs; and the said Virginia Brault shall be entitled to sell the above described property and also to receive the rents and profits arising from said property." The part in quotation marks is accurately transcribed. Some words necessary to the sense are omitted in the original. Over the words "above described," last written above, is written, "and during that time;" but there is no caret mark to show where these words are to be inserted. This instrument is signed by Siemers alone. It is not sealed. On the back of it is written an assignment, in consideration of $500, to Nancy Bowner, of all rights belonging to Virginia Brault by virtue of this "bond." This assignment is dated September 7, 1870, and is signed, sealed, and acknowledged by Virginia Brault.

There was next introduced a quit-claim deed from Siemers and wife to E. P. Johnson his co-plaintiff herein, dated April 27, 1882, in consideration of $5,000, for the same property described in the deed of trust offered in evidence (being the property in suit), and the $9^{98}/_{100}$ acre Sulphur Spring tract.

Plaintiff then testified as to the value of the property in question. He said that he paid the sums required in the contract as he had agreed. That no one had paid him back any of the money so paid by him for Brault. That he never received any money from defendant Chambers or from Nancy Bowner. The Barr note was assigned to witness at

the time of the agreement with Mrs. Brault. Witness paid $328.75 for it, and has held and owned it ever since. The lots were fenced at the date of the agreement. The lots had a fence in the spring of 1870. It remained five or six years; some parts are there yet. Another witness testified as to values, and the improvements on the ground.

This was all the testimony for the plaintiffs.

The defendant Chambers then introduced his tax deed, dated the 23d of February, 1876, which recites a judgment of the county court, at the August term, 1872, in favor of the state against the two lots, nine and ten, in controversy, assessed for 1871 to Peter Siemers for $58.35 for taxes, penalty, interest, and costs, for 1871; the special execution; the sale by the collector thereunder; the bid of Chambers of the amount $58.35 for the two lots, which was the least quantity bid for; and that they were struck off to him. The deed is in the prescribed form, duly acknowledged, and recorded on the 26th of February, 1876, more than six years before this suit was begun.

This deed was objected to, on the grounds that defendants obtained possession through the vendee of plaintiff Siemers and those holding under him; or else were intruders; that the deed was void, because the lots were not assessed against the owner or apparent owners, or any one in possession; and because the two lots were assessed and sold together, and not separately; because the property was improperly described; and because the property was not subject to taxation against Peter Siemers. These objections were overruled.

Defendant Chambers then testified, that he fenced the property in 1871, and put up the house on it in 1876. He tried in vain to lease the lot from 1870 to 1876. There was a suit for the lots by one Brown and Bunch, and Mrs. Brault claimed possession after Brown was defeated. On the 26th of March, 1876, witness got a quit-claim deed

from Bunch, Brault, and Bowner; and Bunch went down and gave witness possession on the part of all three of them. Witness paid taxes since 1872, that is, when they had not been paid. He paid taxes for 1879. Allen had a tax deed for the property. Witness heard he fenced it up. There were posts there when witness put up his fence.

This was all the testimony. No instructions were given. The only declarations of law asked, were the following, asked by plaintiff and refused.

" If, on the 15th of December, 1868, Virginia Brault was in possession of the premises claiming to own the same; and whilst she was in possession said Brault and one Bunch executed and delivered the deed of trust in evidence; and the note secured thereby was assigned and delivered to Siemers; and Siemers afterwards, in June, 1870, executed and delivered to Brault the contract in evidence; and Brault retained possession under the contract, and afterwards assigned and delivered the contract to Nancy Bowner; and afterwards, on the 28th of March, 1876, Bowner, Brault, and Bunch executed and delivered to defendant Chambers a quit-claim deed for, and gave him possession of, the premises; and the sum named in the contract to be paid by Brault to Siemers, or the interest provided for therein are unpaid; and Siemers executed and delivered the quit-claim to his co-plaintiff, the finding should be for plaintiff."

1. So far as paper title goes, it is clear that there was a complete failure to show any such title in plaintiffs. Even if Mrs. Brault were common grantor, no title was derived out of her by the trustee's deed, because the terms of the deed of trust were not complied with as to notice of sale. The sale was made on the nineteenth day after the first insertion of notice. *German Bank* v. *Stumpf*, 73 Mo. 314; Rev. Stats., sect. 3126; *Semple Mfg. Co.* v. *Thomas*, 10 Mo. App. 457.

2. There is no evidence that plaintiff Siemers ever had title to, or possession of, the land in controversy. It seems difficult to see, therefore, how, on any view of the effect of the evidence, plaintiffs can derive any help from any doctrine of estoppel. If Siemers, having possession, had surrendered that possession to Mrs. Brault, she, though she had a valid title at the time, might, if she had obtained then a possession which she could not otherwise have got but by litigation, have been estopped to deny Siemers' title when called upon to surrender her possession. It might be a fraud in one who is in possession, under an agreement to purchase which had fallen through, to put the other party to the agreement to establish his title by litigation before he recovered the possession. But there can be no fraud in refusing to surrender possession to one from whom it was not received, and who never had possession, actual or constructive. The agreement in evidence admits no title in Siemers, but supposes that he has none, and that he is about to acquire it. It is admitted that Mrs. Brault was in possession independently of Siemers when he executed the agreement, and she remained in possession after that.

But how does this claim of plaintiffs affect Chambers? It does not appear that Mrs. Brault was his grantor. She was one of three parties of the first part in a quit-claim to Chambers, which seems to have been executed in compromise of some claim that those parties had to the land. She delivered him possession. But so did Bunch, who was also one of the alienors in the quit-claim. Certainly, Chambers was not estopped by buying peace and taking a quit-claim deed. Bunch was not a party to the agreement signed by Siemers, even if it be conceded that under the circumstances Mrs. Brault, though she did not sign, must be held to be so. Bunch was a witness to the instrument, and proved its execution, as he might have been compelled to do. But there is no evidence that he knew what it was about. Bunch,

Brault, and Bowner seem to have made some claim to the land at the time they gave their quit-claim to Chambers. What the character of that claim was, we can not even guess. Whether Chambers acquired anything from them or whether he got anything by his tax deed, we need not inquire. Plaintiff must recover upon the goodness of his own title, and not upon the badness of that of defendant.

We are unable to make out any theory of law applicable to the facts in evidence and the record admissions in the case, which would have warranted a finding for plaintiff, and the judgment must be affirmed.   All the judges concur.